Marie A. KLOS, Appellant

v.

Stanley L. KLOS, Appellee.

Marie A. Klos, Appellant

v.

Stanley L. Klos, Appellee.

Marie A. Klos, Appellee

v.

Stanley L. Klos, Appellant.

Marie A. Klos, Appellee

v.

Stanley L. Klos, Appellant.

Superior Court of Pennsylvania.

Argued Aug. 29, 2007.
Filed Oct. 10, 2007.
Reargument Denied Nov. 19, 2007.

Mary B. Adamczyk, Pittsburgh, for Marie Klos.

Stanley Klos, Pro Se.

BEFORE: GANTMAN, TAMILIA and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Marie A. Klos (Mother) has appealed and Stanley L. Klos (Father) has cross-appealed *pro se* the order entered on January 5, 2007, in the Court of Common Pleas of Allegheny County, that granted Father primary custody of the parties' minor children and permitted him to relocate the minor children to reside with him in Florida, and the order entered on February 4, 2007, which set forth a comprehensive custody arrangement schedule for the parties.[1] Upon review, we affirm the orders of the trial court.

¶ 2 The relevant facts and procedural history of this case are as follows: The parties married on October 8, 1983. Eight children were born of the marriage, five of whom were minors at the time of the custody trial.[2] The parties' marriage faltered, and the parties separated in early July of 2005. Father filed for divorce in Pinellas County, Florida, in July of 2005, but he did not seek primary custody of the minor children at that time. According to Father, prior to the parties' separation, the family planned to relocate to Florida as part of a compromise between Father and Mother regarding the state of their

---

1. We have consolidated these appeals *sua sponte.*

2. The minor children were: Nicholas (DOB 12/29/1988), Alexandra (DOB 1/9/1990), Mariesha (DOB 12/30/1990), Zachary (DOB 12/17/1992), and Kathleen (DOB 1/29/1996).

family. However, after the parties separated, Mother filed a "Complaint for Confirmation of Primary Custody" on August 17, 2005, and the trial court appointed Samuel A. Moore, Esquire, as guardian *at litem* for the five minor children.

¶ 3 The trial court also appointed Dr. Eric Bernstein, a licensed psychologist, to conduct a custody-related psychological evaluation. Mother also obtained a private psychological evaluation by Dr. Stephen Schachner. The trial court scheduled a custody trial for the late fall of 2006. Prior to the custody trial, Father filed a petition to permit relocation with the minor children. After Father received Dr. Bernstein's report, he filed a petition to obtain primary custody of the minor children. On August 14, 2006, the trial court conducted a hearing on Father's petition. On August 15, 2006, the trial court issued a temporary custody order that permitted Nicholas, then a high school senior, to relocate with Father to Florida, if he desired to relocate, but the order prevented Father from taking any of the other minor children to Florida. Later, Mother permitted Mariesha and Alexandra to relocate to Florida with Father.

¶ 4 The trial court conducted a custody trial on December 21–22, 2006, and on January 4, 2007. As Father was residing in Florida with Nicolas, Mariesha, and Alexandra, the sole issue for the custody trial was the custody and relocation of Zachary and Kathleen. On January 5, 2007, the trial court issued an order that granted Father primary custody of Zachary and Kathleen and permitted him to relocate them to Florida to reside with him. Thereafter, on February 4, 2007, the trial court issued a final custody order that granted Mother shared legal custody of the minor children and established a comprehensive custody and visitation schedule. Both Mother and Father filed notices of appeal from the trial court's January 5, 2007 order and its February 4, 2007 order. The trial court ordered Mother and Father to file concise statements of matters complained of on appeal, and they complied. Thereafter, on April 16, 2007, the trial court authored an opinion that addressed the issues presented by Mother and Father in their respective concise statements.

¶ 5 Mother presents the following issues for our review:

I. Whether the trial court erred or abused its discretion [by] allowing the children to relocate to Florida[:]

  a. Whether the trial court erred or abused its discretion in deciding Father did not meet the *Gruber* criteria and allowed the children to relocate.

  b. Whether the trial court erred or abused its discretion in failing to consider the experts' testimony regarding relocation.

  c. Whether the trial court erred or abused its discretion in failing to consider that relocation was not in the children's best interests.

II. Whether the trial court erred or abused its discretion in awarding primary custody of Zachary and Kathleen to Father[?]

Mother's brief, at 8.

¶ 6 Father presents the following issues for our review:

I. Whether the trial court erred or abused its discretion in the visitation section of the custody [order?]

II. Whether the trial court erred or abused its discretion [in] its order for counseling for the children, Mother, and Father[?]

III. Whether the trial court erred or abused its discretion in awarding primary custody of Zachary and Kathleen to Father[?]

IV.  Whether the trial court erred or abused its discretion by misapplying the evidentiary rules related to hearsay, specifically the residual hearsay rule which is not adopted in Pennsylvania and hearsay rules which would prohibit hearsay testimony of the children's statements[?]

V.  Whether the trial court denied Father Due Process of Law and abused its discretion by refusing the minor children to testify[?]

VI.  Whether the trial court abused its discretion by refusing to allow the adult children to testify[,] thus denying Father Due Process of Law[?]

Father's brief, at 8.

■ ¶ 7 Mother's issues present essentially the same issue for our review, and, therefore, we will review Mother's issues jointly. Our review of challenges to a custody order is governed by the following principles:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*Collins v. Collins*, 897 A.2d 466, 471 (Pa.Super.2006) (citations and quotation marks omitted).

■ ¶ 8 Generally, when a custody case includes a request by one of the parents to relocate with the child, then the best interest analysis must incorporate the three factors originally summarized in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990). *Collins*, 897 A.2d at 471. These factors are as follows:

(1) the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

(2) the integrity of the motives of both the custodial and noncustodial parent in either seeking the move or seeking to prevent it; [and]

(3) the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Collins*, 897 A.2d at 471–72 (citations omitted). Where a custody order exists prior to the petition to relocate, the parent who desires to relocate bears the burden of proving the aforementioned elements. *Id.*, 897 A.2d at 472 n. 6. On the other hand, where the trial court is to formulate a primary physical custody order as well as to decide a petition for relocation, both parents stand on equal footing, sharing the burden of production and persuasion to

demonstrate that the living situation that they will provide to the children serves the children's best interests. *Id.*, 897 A.2d at 472.[3] Consequently, while important, the *Gruber* factors are but one aspect of the overall best interest analysis that is required when the trial court is formulating a primary physical custody order as well as deciding a petition for relocation. *Collins*, 897 A.2d at 472.

¶ 9 The present case consists of an unusual departure from either the traditional *Gruber* analysis or the "equal-footing" analysis described in *Collins*. As noted above, Father moved to Florida prior to *Mother's* initiation of custody proceedings in Pennsylvania, and, thereafter, he sought to relocate the minor children from Pennsylvania to Florida. For this reason, the use of the term "relocation" in this case, as understood in the traditional *Gruber* case, is somewhat incorrect, in that, only the minor children would be "relocating" to Florida because Father is already a Florida resident. Therefore, in reality, the primary focus for the trial court, and, by extension, this Court, was to determine whether the living situation for the minor children at either Mother's home or Father's home in Florida serves the minor children's best interests, *i.e.*, whether Mother or Father should be granted primary physical custody of the minor children. Consequently, the trial court's ex-amination of the factors enunciated in *Gruber* constituted only a small component of that broad analysis. *Collins*, 897 A.2d at 472. As such, we will not, as Mother would have us, perform a mechanical analysis of the *Gruber* factors, but we will instead incorporate our analysis of these issues into the broader question of whether the trial court's custody award was in the best interests of the minor children.

¶ 10 The record reveals that the trial court considered Mother's status as Kathleen and Zachary's primary caretaker and that, despite this status, it concluded that Mother was an overwhelmingly negative force in their lives.[4] The facts presented through the testimony of Kathleen, Attorney Moore, and through Dr. Bernstein's deposition and expert report, indicate that Mother was physically and mentally abusive to the minor children and disparaged Father consistently to the minor children. Indeed, Dr. Bernstein indicated in his report that Mother abused Zachary, Kathleen, and their siblings and that they all were angry with Mother in varying degrees as the result of her abusive behavior. On the other hand, while Father was not involved to the same degree in the minor children's day-to-day lives as Mother, the minor children all felt loved by Father and were intimately close to Father. Likewise, Dr. Bernstein ob-

3. We note that this is not a case in which Father had the burden of proof as Mother did not have *"de facto"* custody of the minor children. Father's initial move to Florida in 2004 was due to an agreement with Mother, whereby Mother and the minor children were to follow Father to Florida. This agreement failed due to the parties' separation. However, the facts reflect that the parties did not separate until July 2005. Thereafter, on August 17, 2005, Mother filed for primary custody of the minor children. This was not a substantial period of time such that it would establish Mother as the *de facto* custodian of the minor children. Accordingly, the parties shared an equal burden of proof in their custody dispute.

4. The "primary caretaker doctrine" requires a trial court to give positive consideration to the parent who has been the primary caretaker. *See Marshall v. Marshall*, 814 A.2d 1226, 1231 (Pa.Super.2002). However, in addition to the quantity of care provided to the children by the primary caretaker, the trial court must also consider the *quality* of care provided by the primary caretaker. *See Wiseman v. Wall*, 718 A.2d 844, 847 (Pa.Super.1998) (emphasis added).

served the minor children in Mother's presence and in Father's presence, and he concluded that, in Father's presence, the minor children were energetic and excited, but, in Mother's presence, they were uncomfortable and fearful. Dr. Bernstein's testimony was buttressed by the testimony of Attorney Moore, who also observed Mother's behavior towards the minor children and concluded that she created a very negative, emotionally-abusive dynamic between herself and the minor children as the result of her bouts of screaming insults at the minor children and her unfair discipline of the minor children. Accordingly, the trial court placed little weight on Mother's status as the primary caretaker of the minor children in its custody analysis. *See Wiseman*, 718 A.2d at 847. Our review of the record supports the trial court's determination. *Id.*, 718 A.2d at 847.

¶ 11 The trial court considered Zachary's and Kathleen's age and maturity, and their strongly-stated preference for living with Father as opposed to Mother. *See, e.g., Mahoney v. Mahoney*, 354 Pa.Super. 585, 512 A.2d 694, 697–98 (1986) (weight to be given child's preference in custody case is to be determined by consideration of child's age, maturity, and reasons for preference). Based upon its examination of Zachary's statements to Dr. Bernstein and Attorney Moore indicating that he wished to live with Father, his reasons for wanting to live with Father, *i.e.*, anger at Mother for her abusive behavior, and his age at trial (14 years), the trial court concluded that he was of sufficient age and maturity that his stated preference to live with Father should be given great weight. *Id.*, 512 A.2d at 697–98. Although Kathleen suffered from a learning disability, the trial court observed her testify and state her reasons for wanting to live with Father,

which were both fear of Mother and the child's desire to live with the rest of her siblings, with whom she had close ties and who were already living with Father. Based on the trial court's observations, it concluded that, despite her age at trial (10 years) and her learning disability, Kathleen was intelligent and mature, and her reasons for wanting to live with Father were grounded in rational concerns. *Cf. Watters v. Watters*, 757 A.2d 966, 969 (Pa.Super.2000) (in child custody dispute involving siblings, absent compelling reasons, siblings should be raised together); *see also Wiseman*, 718 A.2d at 847 (primary caretaker doctrine takes into account quality of care provided to children by primary caretaker). Accordingly, the trial court afforded great weight to her stated preference for living with Father. *Mahoney*, 512 A.2d at 697–98. The record supports these conclusions, and we will not now overturn them. *Id.*, 512 A.2d at 697–98.

¶ 12 The trial court also considered Father's reasons for moving to the State of Florida. Father's step-mother (whom the minor children consider to be their grandmother) resides in Florida with Father in a large home in a gated community, and Father's brother and two sisters reside in neighboring Florida communities. The record reflects that both Zachary and Kathleen enjoy happy relationships with their extended family in Florida and that they also want to live with their other siblings, who reside with Father and his step-mother. Father, a self-employed real estate broker, sought work as either a real estate broker or appraiser with his brother in the then-growing Florida real estate market but that he did not have a real estate broker's or appraiser's license in Florida at the time of trial.[5]

---

**5.** Father attempted to obtain a broker's license in Florida but was unable to do so

¶ 13 We have often held that *non-economic benefits* may weigh heavily in a trial court's decision to permit a parent to relocate with their children to a different state. *See Dranko v. Dranko*, 824 A.2d 1215, 1222 (Pa.Super.2003). In the present case, Father has already relocated to Florida and he resides with the majority of Zachary and Kathleen's immediate family. Father (and his step-mother) can provide the minor children with a loving, stable, and secure environment that is substantially superior to the environment they lived in with Mother in Pennsylvania. Certainly, this particular non-economic benefit outweighs the fact that Father is not currently employed in his chosen profession in Florida. *Collins*, 897 A.2d at 472 (focus of *Gruber* remains "best interests" of children); *Dranko*, 824 A.2d at 1222.

¶ 14 Given that Father had already moved to Florida, the trial court did not delve into a discrete analysis regarding the integrity of his motives in seeking the move. Rather, the trial court considered the integrity of Father's motive in moving Zachary and Kathleen with him to Florida. As discussed previously, Father wanted to move the minor children to Florida in order to keep his children together and provide them with a more loving, stable, and secure environment than that which they had lived in with Mother in Pennsylvania. Mother, on the other hand, offers no explanation for her opposition to the minor children's move, other than the fact that Father did not have immediate employment in Florida and her remaining assertion that Father was going to move out of Pennsylvania regardless of the trial court's decision. Although Father's financial situation was considered by the trial court, it is implicit from the trial court's analysis

that Father's motive in wanting to move Zachary and Kathleen to Florida was not the basis of a momentary whim but, instead, was the product of his genuine concern for their well being.

¶ 15 Finally, it is clear from the record and from the trial court's detailed visitation order that the minor children will continue their relationship with Mother through extended periods of visitation and required daily telephonic contact. Given that a substantial benefit will accrue to both Father and the minor children as a result of the move, the generous visitation schedule proposed by the trial court is adequate to ensure the continued development of the minor children's relationship with Mother. *Gruber*, 583 A.2d at 439. Accordingly, we are satisfied that the trial court did not abuse its discretion when it awarded primary custody of Zachary and Kathleen to Father and permitting them to move to Florida with him. *Collins*, 897 A.2d at 471. Consequently, Mother's issues fail.

■ ¶ 16 We turn to Father's issues. We begin with the observation that Father's first and second issues do not appear in his Pa.R.A.P. 1925(b) statement, and, as such, these issues are waived due to his failure to comply strictly with Pa. R.A.P. 1925(b). *See Commonwealth v. Schofield*, 585 Pa. 389, 888 A.2d 771 (2005) (failure to comply strictly with Pa.R.A.P. 1925(b) results in automatic waiver of issue). Father's remaining issues either constitute a response to Mother's issues, which we have found unavailing, or they ascribe error on the part of the trial court that did not prejudice Father, who prevailed at the custody trial.[6] Accordingly, we will not address these issues. *See Pul-*

---

because Florida would not accept his educational credits.

6. We note that these issues were preserved properly in Father's Pa.R.A.P. 1925(b) statement, filed March 5, 2007.

*liam v. Fannie*, 850 A.2d 636, 641 (Pa.Super.2004).

¶ 17 As neither Mother nor Father has presented a successful argument to this Court warranting reversal of the trial court's orders, we affirm the orders of the trial court.

¶ 18 At 263 WDA 2007, order affirmed.

¶ 19 At 279 WDA 2007, order affirmed.

¶ 20 At 328 WDA 2007, order affirmed.

¶ 21 At 329 WDA 2007, order affirmed.