# Ayala v. Ayala

*Angelo A. Papa Jr.*, for plaintiff.

*Jean Krkuc Perkins*, for defendant.

PICCIONE, *P.J.*, April 18, 2011—Before the court for disposition is petitioner's (hereinafter the "mother") "petition to relocate minor child." The relevant factual background is as follows: mother, Beth A. Ayala, and Michael L. Ayala (hereinafter the "father"), were divorced from each other in 2007. During their marriage, one child was born, A.E.A., born March 23, 2004 (hereinafter the "minor child"). The parties have been before the court regarding custody and related domestic matters many times during which the court has been able to observe the parties in their interactions, receive evidence and testimony regarding their abilities to parent their child, their strengths and weaknesses regarding the resolution of noncomplex custody differences and other domestic issues which from time to time have arisen. In addition, the court has received evidence in the form of testimony and reports from various counselors regarding the parties, their child, their marital difficulties and interactions. By order of court dated June 11, 2009, the court confirmed the parties' custody consent agreement which sets forth the parties' agreed-upon resolution of primary, partial and legal custody, summer vacation, holiday custody and other matters. Pursuant to the parties' June 11, 2009 agreement and the court's order, the mother was granted primary physical custody of the parties' minor child subject to father's partial custody on alternate weekends from Fridays after school until the following Monday at 9:00 a.m. and each Wednesday from after school until 7:00 p.m. that same evening. Further, father was granted

partial custody during the summer vacation from school on alternate Tuesdays from 9:00 a.m. until the following Wednesday at 5:00 p.m., alternate Fridays from 9:00 a.m. until the following Monday at 9:00 a.m. and during alternate weeks on Wednesdays from 9:00 a.m. until Friday at 9:00 a.m.

The mother currently resides in the east side of the city of New Castle, Lawrence County, Pennsylvania and father resides in Shenango Township, Lawrence County, Pennsylvania. However, each of the parties exchange custody of the minor child at the Pennsylvania state police barracks located in Neshannock Township which is in the northern section of Lawrence County, which entails approximately a 10- to 15-minute drive from their current residences for each of the parties. Mother's present household consists of herself and her two children — the minor child and her older sibling. Both children attend school in the New Castle Area School District. Mother currently is employed in a podiatry office located in Beaver Falls, Pennsylvania and has held such position for approximately one and one-half (1-1/2) years.

In September of 2010 and after dating for more than a year, the mother became engaged to Richard Holt and the parties have planned a fall 2011 wedding. Mr. Holt is employed full-time for Nementz Foods in Wellsville, Ohio where he manages Save-a-Lot grocery stores. Mr. Holt did not appear at the hearing because of his work. The mother testified that he has worked for Nementz Foods for approximately four (4) years, earns income which is sufficient, is divorced and enjoys partial custody of his 13-year-old daughter on alternate weekends.

Mother describes the minor child's relationship with her fiance as good, stating that affection is shown back and forth between them. As to the fiance's previous spouse, mother describes that relationship as cordial, stating there is frequent contact. Mother further testified that the minor child and the fiance's daughter refer to each other as sisters and get along well with each other, as well with the mother's other child.

On October 27, 2010 the mother filed a petition to relocate requesting that the court permit her and her children to move to 462 Woodbine Avenue, East Liverpool, Ohio, 43920, the present residence of her fiance.

"With any child custody case, the paramount concern is the best interests of the child." *Collins v. Collins*, 847 A.2d 466, 471 (Pa. Super. 2006). This standard requires a case-by-case assessment of all the relevant factors that could affect the child's well-being. *Id.* When a custody case involves a request by one parent to relocate with the child, a best interest analysis must include consideration of the three factors originally outlined in *Gruber v. Gruber*, 583 A.2d 434 (Pa. Super. 1990). *Klos v. Klos*, 934 A.2d 724, 728 (Pa. Super. 2007) (citing *Collins*, 897 A.2d at 471). The *Gruber* factors are as follows:

(1) the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

(2) the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or

seeking to prevent it; [and]

(3) the availability of realistic substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent. *Id.*

When there is a custody order already in place the parent who desires to relocate bears the burden of proving the aforementioned factors. *Klos*, 934 A.2d at 728.

In determining whether the proposed relocation would improve the quality of life of the custodial parent and child, a court must consider economic opportunities as well as other possible benefits, including reuniting with family and friends or an improved physical environment. *Boyer v. Schake*, 799 A.2d 124,127(Pa. Super. 2002). "Importantly, the court may not ignore or underestimate any facts which are likely to contribute to the well-being and general happiness of the custodial parent and the children." *Billhime v. Billihime*, 869 A.2d 1031, 1038 (Pa. Super. 2005). The court must also consider the respective motives of the parents in requesting or opposing relocation and determine whether the custodial parent will cooperate with alternative visitation arrangements necessitated by the move. *Id.* Finally, the court must decide whether realistic substitute visitation arrangements can be made. *Id.* Such arrangements need not be "as frequent as prior to the relocation in order to allow the relocation." *Schake*, 799 A.2d at 127. "The necessity of shifting visitation arrangements to account for geographical distances will not defeat a move which has been shown to offer real advantages to the custodial parent and children." *Id.*

In the case sub judice, mother bears the burden of production and persuasion as the custodial parent. In support of her position, mother presented several exhibits as well as her own testimony. With respect to the first *Gruber* factor, mother presented evidence of the economic benefits of relocating to East Liverpool, Ohio.

Mother testified that she would move from her New Castle, Pennsylvania residence after the current 2010-2011 school year but prior to the commencement of the 2011-2012 school year, with she and her children residing in her fiance's home in East Liverpool, Ohio. She describes this home as a three (3) bedroom, one (1) bath, three (3) car garage dwelling situate on one (1) acre of land. The property is owned and maintained by Richard Holt and the relocation would relieve mother of the sole responsibility of maintaining her present residence.

Mother has testified that she intends to continue in her present employment, which is located in Beaver Falls, Pennsylvania and which does not present any significant difference in travel time from either dwelling places. In addition, the court has heard testimony from mother that appropriate educational opportunities and institutions are available to the minor child within five (5) miles of her proposed relocation residence; those being the East Liverpool School District, the Beaver Local School District and private school options which are available through a voucher system in the state of Ohio. Additionally, recreational and community activities are available through the East Liverpool Track Club. Therefore, a relocation to East Liverpool, Ohio will most likely not result in a substantial difference in the minor

child's educational, recreational and social opportunities nor in mother's continued employment.

The court heard testimony regarding the relationship among the minor child, her brother, the fiance's daughter, the mother and Mr. Holt. Such relationship was called typical, the court hearing that the girls already refer to themselves as sisters. The individuals all interact appropriately and would appear to have a good chance to interact and live well as a two-parent family unit.

The mother presented testimony that Mr. Holt has been steadily employed with Nementz Foods as the top store manager of the Wellsville, Ohio Save-a-Lot and earns sufficient income to support the family unit. Mr. Holt has worked for his current employer for about four (4) years and generally works six (6) days a week, 6:30 a.m. to 3:00 p.m. The court accepts that Mr. Holt was unable to attend the hearing because of his work responsibilities. Mother testified that the minor child and her fiance get along well together and that Mr. Holt treats the mother and her children well, that a good relationship has developed among all and that she and Mr. Holt are in love.

The mother has demonstrated that relocation to East Liverpool, Ohio would yield economic and non-economic benefits for her and the minor child. Under the first *Gruber* factor, however, mother must also establish that the decision to relocate is not the result of a momentary whim. *Klos*, 934 A.2d at 728. Mother testified that she dated her fiance since July 2009 and became engaged in September of 2010. A wedding in the fall of 2011 is planned. She has determined that it would be in her and her children's

best interest to move into her fiance's house, which is more spacious for her and the children and would relieve her of the maintenance and expense of her present rental property. The court finds mother's testimony on this issue to be credible and it would appear obvious that a newly married couple would want to live together. Furthermore, no evidence to the contrary was presented. As a result, the court is satisfied that mother's desire to relocate to East Liverpool, Ohio is sincere and not the result of a momentary whim.

The second *Gruber* factor requires consideration of the integrity of both parents motives in seeking and opposing the relocation. *Klos*, 934 A2d at 728. As mentioned above, mother's request to relocate appears to be motivated not by any ill-will towards father, but by a genuine desire to live with her future husband and children as a two-parent family unit. The integrity of her motive is demonstrated by her willingness to propose alternative appropriate custody arrangements for the father and to help transport the minor child for custody exchanges. After reviewing the evidence and testimony, it is clear that mother is not requesting relocation in order to inconvenience the father or to sabotage his relationship with the minor child. The court has no reason to doubt that father sincerely cares about his daughter and wants to see her as much as possible; however, some of father's actions indicate that in opposing the relocation, he may also be motivated by feelings of animosity toward the mother. It is obvious to the court from the parties' interactions that communication and cooperation difficulties persist between mother and father which the court believes are principally the result

of the father's obstinance in insisting that everything must be exactly as he alone perceives the custody arrangement requires. Examples of this behavior are insistence upon the exact timing of telephone communications with the minor child and times of custody exchanges.

The father also opposes mother's relocation based upon the increased travel time for custody exchanges. The court finds that at present, the travel time to the point of custody exchange for each of the parties is about 10 to 15 minutes. If mother's request to relocate is granted, the distance between the two parties' residences would be approximately 45 to 60 minutes. By requiring each party to travel to a mutually convenient custody exchange location approximately mid-way between the parties' residences, the mother and father could be reasonably expected to have to travel 25 to 30 minutes. The court does not believe that an increase of about 12 to 15 minutes to the point of custody exchange will occasion a significant hardship upon either of the parties. The father also objects on the basis of increased gasoline costs and the location of the minor child's pediatrician in Lawrence County. As to the increased cost of gasoline, the court does recognize such a factor; however, such increase is not oppressive and may be offset through reasonable partial custody modifications which might result in a reduction of the number of trips to custody exchanges.

After reviewing the evidence and testimony, the court is convinced that mother is seeking relocation because of a genuinely held belief that the move is in the best interest of herself and her children.

The third and final *Gruber* factor requires consideration of the availability of realistic substitute visitation arrangements which will adequately foster an on-going relationship between the child and the non-custodial parent. *Klos*, 934 A.2d at 728. During her testimony, the mother proposed that the minor child stay with the father on alternate weekends after school until Sunday at 6:00 p.m. and that custody of the child during the summer months be changed to alternate weeks between the mother and the father. Mother also proposed maintaining the same holidays as currently enjoyed by the parties with the exception of changing the Christmas holiday exchange time to 5:00 p.m. Mother also proposes that all custody exchanges take place at the Chippewa Township Municipal Building in Beaver County, Pennsylvania, which she asserts would be approximately mid-way between her new residence and father's current residence. The court believes that by providing for alternate weekend partial custody, the alternating summer custody arrangement and the custody maintained through the parties' consent custody agreement, father's time with the minor child will be reduced only slightly, if at all. As a result, he will be able to maintain an on-going relationship with his daughter. Therefore, mother's proposed custody arrangement is realistic and does no harm to the relationship between father and the minor child.

After weighing the *Gruber* factors in conjunction with the best interest of the child standard, the court concludes that mother and minor child should be permitted to relocate to East Liverpool, Ohio. The move will result in improved economic benefits to the mother and will

allow her and her children to live with her new husband. The minor child should benefit directly from the mother's increased economic security and will be able to strengthen her bonds with her sibling and the others involved in her welfare in a stable two-parent household and having a loving and supportive father. Despite the relocation, the minor child will be able to maintain her relationship with the father. She will still see him on weekends, major holidays and during the summer and mother's willingness to assist with transportation will not significantly impact the father's travel times.

As such, the court grants mother's petition to relocate minor child. Accordingly, the court enters the attached order of court.

## ORDER OF COURT

And now, April 18, 2011, the court having held a hearing on February 8, 2011 regarding petitioner Beth A. Ayala's petition to relocate minor child, and petition for special relief filed on behalf of A.E.A. (hereinafter the "minor child"), with Jean Krkuc Perkins, Esquire, appearing and representing Beth A. Ayala (hereinafter the "mother"), Angelo A. Papa, Jr., Esquire, appearing and representing Michael L. Ayala (hereinafter the "father"), and Bradley G. Olson, Jr., Esquire, appearing and representing the minor child, it is hereby ordered and decreed as follows:

1. Mother's petition to relocate minor child is granted pursuant to the attached opinion.

2. Commencing after the mother has relocated her residence to East Liverpool, Ohio:

140

a)   The father shall be entitled to partial custody of the parties' minor child, A.E.A., on alternate weekends after school until the following Sunday at 6:00 p.m. Such alternate weekends shall not be during the alternate weekends when the child of the fiance is scheduled for custody at the fiance's residence; and

b)   The father shall be entitled to partial custody with the minor child during the summer months of June, July and August during alternate weeks from Sunday to Sunday, commencing the first Sunday following the last day of school beginning at 6:00 p.m. until the following Sunday at 6:00 p.m. and alternating thereafter on a one (1) week basis with the mother. The summer of 2011, the partial custody will end on the last Sunday preceding the commencement of the new school year.

c)   The parties shall continue to enjoy two (2) weeks of non-consecutive summer vacation with the minor child. However, unless the mother and father mutually agree otherwise, such vacation time shall coincide with an alternating summer week during which the vacationing parent already is scheduled to have custody of the minor child.

3.   Each of the parties shall participate in the transportation of the minor child to and from the custody exchanges. The parties are further given the opportunity to amicably determine and agree upon a place for the custody exchange to occur. However, in the event the parties are unable to mutually agree upon a place for the custody exchanges, the court then directs that the custody exchanges take place at the designated times at the

Chippewa Township Municipal Building, Beaver County, Pennsylvania with each party traveling to that point and arriving within five (5) minutes of the exchange time.

4. The time of the custody exchange on Christmas shall be changed to 5:00 p.m.

5. All other provisions of the court's order dated June 11, 2009 confirming the parties' custody consent agreement, not amended by or in conflict with the provisions of this instant order of court, shall continue and remain in full force and effect.

6. The petition for special relief is granted and except in case of emergency or general invitation to the public to attend an event such as open house, school play or assembly, the father shall not present himself on the premises of Thaddeus Stevens Elementary School without prior written arrangement and authorization from the school administrator.

7. The prothonotary shall properly serve notice of this order and attached opinion upon counsel of record; and if a party has no counsel, then upon said party at their last known address as contained in the court's file.