**Daniel v. Borbidge**

*James A Butz*, for plaintiff
*Patrick J. Best*, for defendant

HIGGINS, *J.*, August 7, 2013—Plaintiff Brandon Daniel (hereinafter "father") and defendant Rebecca Borbidge (hereinafter "mother") were married on April 13, 2004, and divorced in April 2012 in the state of Arkansas. Two children were born of the marriage, Katelyn Daniel, DOB 10/8/2004 and Coleton Daniel, DOB 8/23/2006 (collectively referred to as "children"). After several evidentiary hearings were held in this matter in 2012, primary physical custody of the children was awarded

to father subject to mother's periods of partial physical custody on September 13, 2012. On February 6, 2013, mother filed a petition for modification of a joint custody order, seeking primary physical custody of the children and requesting to relocate with the children to Harrisburg, Pennsylvania. On February 25, 2013, father filed an answer opposing mother's request for primary physical custody of the children and mother's request to relocate with the children to Harrisburg, Pennsylvania. On February 25, 2013, father also filed a notice of relocation seeking this court's permission to relocate with the children to Salida, Chaffee County, Colorado. An evidentiary hearing was scheduled, however, father requested a continuance of the hearing due to a second back surgery. The matter was then re-scheduled for and heard on June 26, 2013. At the time of hearing mother withdrew her request to relocate to Harrisburg, however, she requests this court to modify the current custody order to permit mother to have primary physical custody of the children. We are now ready to dispose of all the issues presented by the parties.

In a child custody case, our ultimate purpose is to determine what is in the best interest of the child. *Clapper v. Harvey*, 716 A.2d 1271, 1273 (Pa. Super. 1998) (citation omitted). In determining the best interest of the child, we must proceed on a case-by-case basis and we must consider all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. *Fuehrer v Fuehrer*, 906 A.2d 1198, 1200 (Pa. Super. 2006) (citations omitted).

Pennsylvania state legislature has defined elements, which are to be considered in custody cases. The statute, in relevant part, is as follows:

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the

child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. §5328(a).

As the Pennsylvania courts have interpreted, the statute requires that in any custody case, our paramount concern must be for the best interest of the child after considering all factors set forth above. *S.M. v. J.M*, 811 A.2d 621, 623 (Pa. Super. 2002)(citations omitted). As the best interest of the child is a nebulous concept, we will consider all relevant factors affecting the child's well-being. *Landis v. Landis*, 869 A.2d at 1003 (Pa. Super. 2005). There are no presumptions in favor of either parent. *Sawko v. Sawko*, 625 A.2d 692 (Pa. Super. 1993). Accordingly, we will

make its determination based solely on the particular facts and circumstances of each case. *Id.*

Instantly, we find that the circumstances in this case have not changed significantly since our custody determination in September 2012. We set forth our findings in our previous opinion and order filed on September 13, 2012, and we will not reiterate them here. However, at our hearing on June 26, 2013, Katelyn's therapist, Carol Haupt testified credibly again. Ms. Haupt stated that Katelyn has been experiencing anxiety which manifests itself in sexual ways. Ms. Haupt attributes Katelyn's anxiety to the relocations proposed by both parents. During one session, Katelyn hid in the room and cried. Ms. Haupt stated that she is unsure whether the frequency of Katelyn's visits with mother are helping the relationship. Nevertheless, we believe that therapy with Ms. Haupt has been beneficial to Katelyn. We believe that it is in Katelyn's best interest to keep the status quo with father retaining primary physical custody subject to mother's periods of visitation.

Mother has withdrawn her request to relocate, however we must consider father's request for relocation. Since father desires to relocate the children to Salida, Chaffee County, Colorado, we must engage in a discussion pursuant in *Gruber v. Gruber*, 400 Pa. Super. 174, 583 A.2d 434 (1990). When there is a request by one of the parents to relocate with the child, then the best interest analysis must incorporate the three factors originally outlined in *Gruber*. In a relocation case, the *Gruber* factors must be considered and applied "under the umbrella of the ultimate objective of determining the best interests of the child." *Landis v. Landis*, 869 A.2d 1003 (Pa. Super. 2005). (citation omitted). Specifically, under *Gruber*, the court must consider the following:

the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent; **** the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; [and] the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent. *Landis*, 869 A.2d at 1011-12 (citations omitted). *Collins v. Collins*, 897 A.2d at 471-472.

In *Klos v. Klos*, 934 A.2d 724 (Pa. Super. 2007), our superior court stated:

Where a custody order exists prior to the petition to relocate, the parent who desires to relocate bears the burden of proving the aforementioned elements. *Id.*, 897 A.2d at 472 n.6. On the other hand, where the trial court is to formulate a primary physical custody order as well as to decide a petition for relocation, both parents stand on equal footing, sharing the burden of production and persuasion to demonstrate that the living situation that they will provide to the children serves the children's best interests. *Id.*, 897 A.2d at 472. *Klos*, 934 A.2d at 728-729 (footnote omitted).

There is a final custody order has been entered in this case, therefore, this is solely a relocation case; the standard described by the *Klos* court is the one that is not applicable.

Both parents impressed the court with their sincere interest in their children's welfare. When considering

father's burden of demonstrating the elements set forth in *Gruber*, we find that it is in the children's best interest to remain in Monroe County. We weigh the potential advantages of the relocation against the children remaining in Monroe County. While father indicated that he has extensive family in Colorado, mother would remain in Monroe County where her family resides. The distance between Monroe County and Chaffee County is approximately 1840 miles. While we recognize that one advantage of the proposed move is removing the children from Monroe County which, in turn, reduces triggers for Katelyn. The disadvantage is that the children would be 1840 miles from mother. Currently, Katelyn is therapy with Ms. Haupt and Katelyn is progressing well. Ms. Haupt does believe that the move to Colorado would be damaging to Katelyn but she believes that it would take time for Katelyn to develop a relationship with a new therapist in Colorado. Although Ms. Haupt cited several benefits for Katelyn in moving to Colorado, we must consider the potential advantages to both children by the proposed move.

Father wants to give the children a new start in Colorado. Father testified that the relocation would benefit the children because father's family lives in Chaffee County, Colorado. Father states that he would live in his uncle's house until he could obtain housing closer to the children's new school. Father presented a packet with the details of Chaffee County, Colorado. The Rocky Mountain area appears to be a wonderful place to raise children with a student/teacher ratio of 15:1 and a low percentage of registered sexual predators. Although father does not have a job at this time, he testified that he is able to gain employment through a business known as Cain Builders.

Father states that his grandfather has known the owners of Cain Builders for many years. Father also indicated that the children can speak and see mother on a daily basis using Skype.com. However, visitation would be difficult and restricted to summer and long school breaks. Due to the distance between Monroe County and Chaffee County, and the children's ages, father proposes that the parties meet halfway in Davenport, Iowa for custody exchanges. This is not a viable for custody exchanges. We will not require mother to drive to Iowa for custody exchanges.

Although, father indicates that a new therapist would be one hour and forty minutes away and until he obtained new housing, the children's school would be forty minutes from his uncle's house. Father expressed concerns over the number of sexual predators in Pennsylvania and he insists the proposed relocation is not a spur of the moment decision. We believe that based upon the evidence the relocation would substantially improve the life of father, however, we are not convinced that the move would substantially improve the quality of life for the children. First, we consider the distance between the two households. While father states that the children can see mother daily through Skype.com, we do not believe this type of interaction is best for the children's relationship with mother. Prior to father being awarded primary physical custody, mother was the primary custodian. We were impressed that both mother and father demonstrated a genuine concern for their children.

Next, we will consider the motives of the parties. Father proposes to move to Chaffee County, Colorado for a better life. Father has many family members in the area, mother opposes the move due to the distance and her inability to see the children on a regular basis. Father appears

sincere that the move would improve the quality of his life and also the children's lives. However, we cannot say that the move would substantially improve the quality of life for father and the children. Father would be taking the children far from mother. We do not believe that this would benefit the relationship between the children and mother. Nevertheless, we find that father has pure motives in regards to the proposed move.

Finally, we must consider the availability of a realistic, substitute arrangement which will adequately foster an ongoing relationship between the child and parent. Continuity and stability are important elements in a young child's emotional development. *Witmayer v. Witmayer*, 467 A.2d 371, 376 (Pa. Super. 1983) (citations omitted). Therefore, in addressing the *Gruber* factors, we find that while the move to Chaffee County, Colorado may benefit father, we do not believe that it is not in the best interests of the children. The proposed move would to require them to leave their family and familiar surroundings. While we have found no improper motive in father's decision to relocate; neither do we find any improper motives in mother's decision to oppose the move. The reality of permitting such a move would be to drastically hinder a realistic relationship between mother and children. The children have lived with mother for their entire life until November 2012. The use of Skype.com will not foster a meaningful ongoing relationship between mother and the children. Partial physical custody arrangements could be made for mother after such a move, but it would be difficult for mother to physically visit with the children on a regular basis. Under the facts as presented to this court, we find that maintaining the status quo is in children's best interest. Up until the most recent custody filings

both parents communicate adequately with each other and impressed this court as being concerned with the children's best interests. After careful reflection, we are convinced that the children's best interests are served by maintaining the status quo. Accordingly, based upon all of the above elements, we find that the proposed move would not be in the children's best interests and we enter the following order:

## ORDER

And now, this 7th day of August 2013, following an evidentiary custody hearing before the court during which Rebecca Borbidge (mother) was represented by Patrick J. Best, Esquire, and Brandon Daniel (father) was represented by James A. Butz, Esquire, it is hereby ordered that father's request to relocate to Chaffee County, Colorado is denied. It is further ordered that mother's petition for modification of custody is denied. The custody order entered on September 13, 2012 shall remain in full force and effect.