J-S14001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BECKIE BOFFOLI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUIZ RODRIGUEZ | : | No. 1355 WDA 2022 |

Appeal from the Order Entered November 10, 2022
In the Court of Common Pleas of Allegheny County
Family Court at No(s):  FD 10-1835-003

BEFORE:   PANELLA, P.J., BENDER, P.J.E., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:          **FILED:  June 23, 2023**

B.B. ("Mother") appeals the Allegheny Court of Common Pleas' order granting L.R. ("Father") primary physical custody and shared legal custody of their two children, K.B. and A.B. Mother is *pro se* and has not included a statement of questions involved section in her brief. Although Mother does offer an argument section, this section consists mostly of disjointed and summary allegations, making it difficult to discern the actual issues Mother purports to raise on appeal. From what we can glean, Mother is essentially arguing the trial court erred by failing to consider certain evidence, while improperly crediting and weighing other evidence, and that the trial court

---

[*] Retired Senior Judge assigned to the Superior Court.

violated her due process rights. As these claims are either waived, meritless, or both, we affirm.

Mother has six children. She shares K.B., born in 2007, and A.B., born in 2010, with Father. She has two adult children from a previous relationship. In addition, Mother has two children younger than K.B. and A.B., whose father is R.N., a convicted sex offender. The only two children at issue in this custody dispute are K.B. and A.B.

The Office of Children, Youth and Families ("OCYF") has been involved with all six of Mother's children. OCYF first became involved with the family over twelve years ago, when it was alleged that Mother's now adult son, R.S., sexually abused his sibling when R.S. was a juvenile. Mother stated that she eventually pleaded guilty to recklessly endangering another person as a result of this abuse.

OCYF again became involved with the family after Mother had two children with R.N. in 2015 and 2017, and OCYF discovered R.N. had been convicted of sex crimes against children. R.N. moved out of Pennsylvania. However, he then moved back to Pennsylvania and into Mother's house, prompting OCYF to again become involved with the family. During OCYF's investigation, K.B. disclosed that R.N. had sexually abused her.

OCYF removed K.B., A.B. and the two youngest children from Mother's care, and filed dependency petitions for all four children. Following an adjudicatory hearing, OCYF withdrew the dependency petitions related to K.B.

and A.B. and placed them in the custody of Father.[1] Father was granted full physical custody, with the exception of periods of partial custody given to Mother on weekends. Mother was initially precluded from exercising those partial custodial periods in her home, although the court later issued an order allowing K.B. and A.B. to visit Mother in her home as long as R.N. was not present.

On November 21, 2021, Mother filed a complaint in custody, with Mother requesting additional periods of custody. The case eventually proceeded to trial, where both Mother and Father represented themselves.

The two children testified in-camera first. Following the court's examination of A.B. and K.B., the court brought Mother and Father back into the courtroom so they could ask the children questions. A.B. testified that he liked living at Father's. On cross-examination by Mother, A.B. stated that he wanted to spend more time with Mother "[m]aybe like we talked about." N.T. Custody Hearing, 9/30/2022, at 18.

K.B. told the court that things were going "really good" at Father's house. *See id.* at 26. She stated she likes to live with Father, although she did say Father has a temper. *See id.* at 26-27. K.B. shared that she wanted to spend more time with Mother, and perhaps stay overnight one night a week with her. *See id.* at 32. On cross-examination by Mother, K.B. admitted she

---

[1] The two youngest children were adjudicated dependent, and Mother's parental rights to those two children were ultimately involuntarily terminated.

had discussed the custody matter with Mother, but K.B. agreed with Mother that Mother had not coached K.B. on her testimony. ***See id.*** at 40.

K.B. testified during Father's cross-examination that she wanted to live with Father, but that she also wanted to have overnight visits with Mother. ***See id.*** 43. She stated she felt safe at Mother's house "most of the time," but was concerned Mother was still talking with R.N. ***Id.*** at 44. K.B. admitted she frequently acted as a mediator between her parents. ***See id.*** at 48-49.

Christina Moran, the family's OCYF caseworker for Mother and her two youngest children, testified next. She stated she continued to have concerns that R.N. was living with Mother. ***See id.*** at 53. Moran told the court she was also concerned about Mother's ability to protect her children and to keep them safe, and her inability to appreciate the risk of exposing her children to R.N. ***See id.*** at 55, 57.

Mother cross-examined Moran at length. ***See id.*** at 59-78. During cross-examination, Moran reiterated that R.N. had been found at Mother's home multiple times and had been served papers there. ***See id.*** at 67-69.

Mother presented her adult son, R.S., to testify. Before he did so, Mother was asked to step out of the courtroom, which she did. ***See id.*** at 82. R.S. made clear he had completed a program for sex offenders and had the charges related to his abuse of his sibling expunged. He told the court he thought it was in the best interests of K.B. and A.B. to live with Father, because Mother was not "capable mentally, physically, or any way to take care of children."

- 4 -

*Id.* at 85. He called Mother "very manipulative." *Id.* at 87. He explained Mother had allowed the children to be around R.N. even after she knew he posed a risk to them, *see id.* at 86, and informed the court Mother was still in contact with R.N., *see id.* at 89.

Mother was brought back into the courtroom and cross-examined R.S. During cross-examination, R.S. testified he had lived with Mother for the past three months, and had not seen R.N. at the house during that time. *See id.* at 98-99.

Mother also testified. She maintained R.N. did not live with her. *See id.* at 101. She admitted R.N. had been in her house, but she claimed she had cut off contact with R.N. about a week before the trial. *See id.* at 102, 110. Mother noted she had concerns with Father's mental health, drug and alcohol use and his temper, which had upset the children in the past. *See id.* at 105. She told the court she wanted more custodial time with K.B. and A.B. but if they "don't feel safe in my home, I'm not going to force them to do that." *Id.* at 108.

Father testified last. He testified that K.B. and A.B. were happy and doing well, and K.B. was getting therapy for the sexual abuse she suffered. *See id.* at 117, 120. He stated that he wanted the children to have a relationship with Mother and their half siblings. *See id.* at 116. However, he felt he should have full physical custody of K.B. and A.B., but leave it up to K.B.'s discretion on when to visit Mother. *See id.* at 118. He was clear that

those visits should not include overnights, though, as he was concerned R.N. would be there. **See id.** at 118-119. Mother cross-examined Father, and Father admitted he had not personally seen R.N. at Mother's house. **See id.** at 123.

Following the hearing, the court issued an order granting shared legal custody to Mother and Father. However, the order awarded full physical custody of K.B. and A.B to Father, with Mother having partial physical custody at K.B.'s and A.B.'s discretion. The order prohibited overnight visits with Mother and also prohibited R.N. from being present at any of Mother's custodial periods.

The court also issued an opinion along with the order. There, the trial court went through an analysis of each of the 16 custody factors the court was statutorily required to consider pursuant to 23 Pa.C.S.A. § 5328(a). **See** 23 Pa. C.S.A. § 5328(a) (1)-(16). The entirety of that analysis can be found on pages four through 11 of the court's opinion, with the court weighing the evidence and making credibility determinations relevant to each of the 16 factors when reaching its determination whether that particular factor favored either party or was neutral. **See** Trial Court Opinion, 11/10/2022, at 4-11. Based on this analysis, the court concluded:

> [T]he court cannot overlook Mother's continued romantic relationship with [R.N.] and her ongoing mental health concerns. Both of these issues impact the safety of the children and pose a continued risk of harm. Mother lacks accountability and has not developed any insight into how her choices have affected her children.

*Id.* at 11.

The court acknowledged that Father had some issues in need of improvement but overall, it concluded that awarding Father full physical custody and Mother partial physical custody in the manner it did was in the best interests of K.B. and A.B.

Mother filed a timely notice of appeal, but failed to attach her Pa.R.A.P. 1925(b) statement contemporaneously with her notice of appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court ordered Mother to file a statement, and Mother complied. Given these circumstances, we find the appeal is properly before us and need not be dismissed based on Mother's late filing. *See In re K.T.E.L.*, 983 A.2d 745, 747 n.1, 748 (Pa. Super. 2009) (finding that although the appellant in a children's fast track appeal did not file a contemporaneous Rule 1925(b) statement with her notice of appeal, the Court would not dismiss the appeal because the appellant later filed a statement and there was no allegation of prejudice).

However, as the court noted in its responsive Rule 1925(a) opinion, the Rule 1925(b) statement Mother did file was anything but concise. In fact, the statement was a six-page, single-spaced narrative alleging the trial court had been partial and biased against Mother in a multitude of ways, had issued an order and opinion that was "inaccurate and false" on several fronts, and had violated her due process rights.

In its responsive opinion, the court noted that although Mother's statement was not concise and raised duplicative and convoluted issues, it discerned that Mother's two primary complaints were that the trial court violated her due process rights and improperly applied the 16 statutory custody factors. The court addressed Mother's many claims regarding how the court had purportedly misunderstood the evidence or improperly weighed or credited certain evidence, and found each of those claims were without merit. It further found Mother's claims regarding the court's partiality and need to recuse itself were waived, as she was raising those claims for the first time on appeal. The court concluded that it had thoroughly and properly considered the custody factors, and based on this analysis, had reached a custody order that was in the best interests of K.B. and A.B.

When this Court reviews a custody order, we do so for an abuse of discretion. *See Yates v. Yates*, 963 A.2d 535, 538 (Pa. Super. 2008). Such an abuse of discretion will only be found if the "trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record." *Id*.

Further, in reviewing a custody order:

We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's

- 8 -

deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Klos v. Klos*, 934 A.2d 724, 728 (Pa. Super. 2007) (citation omitted). As with any custody matter, the paramount concern is the best interests of the children involved. *See id.*

Like her Rule 1925(b) statement, Mother's brief on appeal is deficient. Her brief does not comply with the Rules of Appellate Procedure in a number of ways. As noted above, her brief does not present the questions for review and does not have a statement of jurisdiction, the order in question, or a statement of the case. *See* Pa.R.A.P. 2111.

Mother provides an argument section, but it primarily consists of a series of allegations that the trial court erred by failing to consider Father's history which Mother alleges includes issues with mental health and drugs, and erred in how it weighed the evidence and by crediting testimony and evidence that Mother essentially contends is not credible. Mother, however, does not cite one case in her argument section. She does not cite to the custody factors in Section 5328(a), or make any allegation that the trial court improperly applied those factors. Even though she references testimony in her argument, she does not ever cite to the record. Given these circumstances, we are constrained to find that Mother's claims regarding the trial court's handling of the evidence are waived. *See* Pa.R.A.P. 2119(a),(c); *Commonwealth v.*

*Johnson*, 985 A.2d 915, 924 (Pa. 2009) (providing that a claim will be deemed waived where the appellate brief fails to meaningfully discuss that claim with citation to relevant authority).

We recognize that Mother is proceeding *pro se*. Still, even *pro se* litigants must comply with the Rules of Appellate Procedure. **See Commonwealth v. Lyons**, 833 A.2d 245, 252 (Pa. Super. 2003). Mother has not done so here.

Even if Mother's claims were not waived, they have no merit. Mother first asserts the trial court did not consider evidence of Father's past mental health issues and drug use, but the trial court explicitly rejected this claim on the basis that Mother did not present any evidence to the trial court contradicting the caseworker's testimony that OCYF did not have these concerns with Father. **See** Trial Court Opinion, 1/9/2023, at 9.

Mother also makes a series of claims that the trial court erred in its credibility and weight determinations. For example, she continues to assert she does not have a relationship with R.N., contrary to what the trial court found. She also maintains the trial court erred by crediting the caseworker's testimony because it was false and the caseworker is biased against her. However, we have made clear that credibility and weight determinations are within the province of the trial court as fact-finder in custody cases. **See Klos**, 934 A.2d at 728. While Mother clearly disagrees with the trial court's weight and credibility determinations, those determinations were for the court to

make and we must defer to them. **See id.** Accordingly, Mother's claims are therefore not only waived, but without merit.

Mother also complains her due process rights were violated. First, she alleges the trial court was biased against her in her summary of the argument section, and requests that the trial court recuse itself in her summary of the argument section as well as at the end of her argument section. However, as the trial court pointed out, Mother never made such an argument or request before the trial court and her allegations of bias and request for recusal are therefore waived. **See** Pa.R.A.P. 302(a) (providing that issues not raised in the trial court and raised for the first time on appeal are waived); **Commonwealth v. Watson**, 228 A.3d 928, 939 (Pa. Super. 2020) (stating that in general, a motion for recusal is properly directed to and decided by, in the first instance, the jurist whose participation is being challenged).

Mother also argues the trial court violated her due process rights by not allowing her to confront the testimony of her son, R.S. Mother acknowledges that R.S. was her witness, but argues R.S. lied about Mother while testifying and Mother was unaware of these lies as she had stepped out of the courtroom during his testimony. The trial court did not address this issue in its Rule 1925(a) opinion, as the issue is not clearly spelled out in Mother's Rule 1925(b) statement. It is waived for that reason. **See Commonwealth v. Lord,** 719 A.2d 306, 309 (Pa. 1998). However, her claim is also waived for lack of development. In making her argument that her due process rights were

violated in this context, Mother fails to cite to one case to support her contention or provide any meaningful legal analysis of the issue. The claim is waived for that reason as well. **See Johnson**, 985 A.2d at 924.

We also note that Mother's argument fails to acknowledge that she was given the opportunity to cross-examine R.S., and in fact, did cross-examine R.S. As such, even if her claim were not waived, she has failed to establish that her assertion that she was not given such an opportunity would warrant any relief.

As we find all of Mother's issues are waived, meritless, or both, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2023