J-A19022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.R. | : | |
| | : | |
| Appellant | : | No. 22 MDA 2018 |

Appeal from the Order Entered December 4, 2017
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s): 2017-979

BEFORE: GANTMAN, P.J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED: NOVEMBER 9, 2018**

A.R. (Mother), appeals from the final custody order, which denied Mother's petition to relocate, granted M.W. (Father) primary physical custody, granted Mother partial physical custody, and awarded shared legal custody of the parties' minor daughters, V.W., born in July of 2011, and S.W., born in June of 2015 (collectively, Children). We affirm.

Mother, Father, and Children resided in Thompson, Pennsylvania in a home owned by Mother until August of 2017.[1] In early August of 2017, Mother applied for a position teaching kindergarten at a private school in Florida and began to make plans to move to Florida. Mother believed that Father and Children would follow her to Florida, but that she and Father would live separately once in Florida.

_____

[1] Mother and Father were not married.

Mother started her new job and obtained an apartment in Florida in the middle of August. When she returned to Pennsylvania to retrieve Children, Father asserted he had no intention of moving to Florida and insisted Children remain with him in Pennsylvania. Disputes arose as Mother attempted to take Children back to Florida. The Pennsylvania State Police arrived and told Mother and Father to work out an agreement. The next day, Mother again attempted to leave with Children and the police again responded. Mother testified she and Father got into a physical altercation where Father got in Mother's face, Mother pushed Father, and Father grabbed Mother by the throat before attempting to run into the house with Children. Mother then grabbed Father and scratched him. Mother and Father were both charged with harassment as a result of the incident. Mother and Father ultimately agreed to a trooper's recommendation that Mother return to Florida with S.W. and Father remain in Pennsylvania with V.W.

On August 25, 2017, Father filed a complaint for custody, which Mother answered. On September 1, 2017, Mother issued a notice of proposed relocation. Father filed a counter-affidavit objecting to relocation on September 29, 2017. Mother filed a petition for relocation on October 23, 2017, which Father answered.

On November 27, 2017, the trial court held a custody and relocation hearing at which Father and Mother testified. Mother called a friend, B.D., as well as a representative of her employer in Florida to testify on her behalf.

Father called his co-worker, from whom he was renting two rooms at the time of the hearing.[2]

On December 4, 2017, the trial court entered findings of fact and an order denying Mother's petition to relocate, granting Father primary physical custody of Children, granting Mother partial physical custody of Children if Mother remained in Florida,[3] and awarding shared legal custody of Children. Order, 12/4/17, at 1-2.

Mother filed a timely notice of appeal and concise statement of errors complained of on appeal. This appeal followed.

Mother raises the following questions for our review:

1. Did the [trial] court err by abusing its discretion by failing to recognize the overwhelming amount of evidence presented in this case which clearly established that [Father]'s behavior toward [Mother] during the planning and the preparing to relocate[] to Florida was deliberately intended to lull [Mother] into a false sense of [Father]'s acceptance of the move of Children to Florida, clearly demonstrating his intent to thwart [Mother]'s relationship with Children by objecting to the relocation only after [Father] fully committed to the move in question, and shifting the weight of the evidence in [Mother]'s favor for granting relocation to Florida?

_____

[2] Mother's home in Pennsylvania went into foreclosure before the hearing.

[3] The order provided Mother partial physical custody of Children from the first Monday after the end of the school year until the final full week prior to the next school year beginning. Order 12/4/17, at 1-2. Further, the order stated "Mother shall have additional periods of partial custody on holidays and/or extended school breaks . . . as the parties may arrange based upon their financial abilities to pay the transportation costs to and from Florida." *Id.* If Mother resided in Pennsylvania in Children's school district, however, the order provided the parties with week on/week off shared physical custody. *Id.* at 2.

2. Did the [trial] court err by abusing its discretion by failing to recognize [Mother] as the primary [caretaker] and, for all intents and purposes, the exclusive caregiver of both children which shifted the weight of the evidence in [Mother]'s favor and fully supported relocation as in Children's best interest?

3. Did the [trial] court err by abusing its discretion by failing to recognize that both parties, as custodian of one child at the time of the hearing, had the burden of proving the appropriateness of each parent's relocation of the child not in his or her custody at that time, which [Father] completely failed to do?

4. Did the [trial] court err by abusing its discretion by failing to recognize the shift in the burden of proof from [Mother] to [Father] on the issue of relocation for the minor child V.W. who was in his custody at the time of the hearing in question?

5. Did the [trial] court err as a matter of law by relying on information outside of the record, *i.e.* the alleged status of [Mother]'s teaching certificate, when neither party presented evidence that could have been construed as it was by the [c]ourt?

6. Did the [trial] court err by abusing its discretion by failing to recognize that the weight of the evidence favors retention of primary physical custody of [C]hildren by [Mother]?

7. Did the [trial] court err by abusing its discretion by failing to recognize that the weight of the evidence favors relocation of [C]hildren with [Mother]?

Mother's Brief at 3-4.

In cases under the Child Custody Act (the Act), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial

- 4 -

judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated:

the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

"Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order." ***M.A.T. v. G.S.T.***, 989 A.2d 11, 18 (Pa. Super. 2010) (*en banc*) (citations omitted). "An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." ***Bulgarelli v. Bulgarelli***, 934 A.2d 107, 111 (Pa. Super. 2007) (citation omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. ***See*** 23 Pa.C.S. § 5328. Section 5328(a) sets forth the best interest factors that the trial court must consider. ***See E.D. v.***

*M.P.*, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011). Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

Section 5328(a) of the Act provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Where a request for relocation of the subject children along with a parent is involved, the trial court must consider all of the following ten relocation factors set forth within Section 5337(h) of the Act:

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h); *see E.D.*, 33 A.3d at 81-82 ("Section 5337(h) mandates that the trial court **shall** consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child" (emphasis in original)).

Further, we have explained:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013). . . . A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014).

Similarly, with regard to relocation, in *A.M.S. v. M.R.C.*, 70 A.3d 830 (Pa. Super. 2013), we stated:

[W]e conclude here that sections 5323(d) and 5328 require the trial court to set forth [the reasons for its decision] at or near the time it issues its decision in a custody proceeding. We have held that, because the best interests of the child are the paramount concern of any custody case, the trial court must address the sixteen best interest factors of section 5328(a) and the ten relocation factors of section 5337(h). *B.K.M. v. J.A.M.*, 50 A.3d 168, 172-75 (Pa. Super. 2012) (finding the trial court erred in failing to consider all section 5328(a) and section 5337(h) factors). Therefore, by logical necessity, today we emphasize that our holding in *C.B.* (*i.e.*, that section 5323(d) requires the trial court to delineate its reasoning at or near the time of its decision)

extends to cases that involve both custody and relocation pursuant to section 5337.

**A.M.S.**, 70 A.3d at 835.

"When a custody dispute involves a request by a party to relocate, we have explained 'there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis.'" **C.M.K. v. K.E.M.**, 45 A.3d 417, 421 (Pa. Super. 2012) (citation omitted).

Mother first contends the trial court erred in its evaluation of the fifth relocation factor, that is "[w]hether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party." **See** 23 Pa.C.S. § 5337(h)(5). Mother asserts that Father, through "deception and trickery," led her to believe that Father and Children would move to Florida after she relocated there. Mother's Brief at 10-13. Mother claims that because this conduct occurred "over a period of months," there was a pattern of conduct designed to thwart the relationship between Mother and Children by having Mother move to Florida without them. **Id.** at 11. Mother concludes "[i]t is against public policy and the spirit of the relocation statute to think that one party could trick or deceive the other into thinking that party consented to the relocation when in fact he did not consent." **Id.** at 12.

A review of the record reveals the following.[4] Mother applied for her job in Florida on August 3, 2017 and began work August 21, 2017. N.T., 11/27/17, at 83. Mother testified that Father never told her that he did not want Mother or Children to move to Florida. *Id.* at 137. Mother claimed Father informed her before she left that he would fly to Florida. *Id.* at 138. Mother testified that Father only informed her that he would not move to Florida after she had secured employment as well as an apartment. *Id.* at 139-40.

Father, on the other hand, testified that Mother came to him in early August of 2017 and informed him she was moving to Florida. *Id.* at 17. He questioned why she would want to move and Mother replied that there were no jobs and it is too cold in Pennsylvania. *Id.* Father testified that he repeatedly told Mother he did not want to move to Florida and did not want his children to move to Florida, but that Mother's attitude was that her move was not negotiable. *Id.* at 17, 43-44.

_____

[4] We note that the certified record does not contain a transcript of the November 27, 2017 hearing. However, the transcript of the hearing is contained in the reproduced record and is cited by both parties. "It is well-established in this Commonwealth that it is 'the appellant's responsibility to order the transcript required and ascertain its presence in the record prior to certification for appeal.'" *Commonwealth v. O'Black*, 897 A.2d 1234, 1238 (Pa. Super. 2006). Nevertheless, because the transcript is contained in the reproduced record and the accuracy of the transcript has not been disputed, we will consider it. *See Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012).

According to Father, Mother rented a truck, loaded it, and left, informing Father she would leave Children with Father for two weeks so Children could see Father's parents. *Id.* at 18. Father testified that he assisted Mother loading the truck because he did not want a "physical brawl." *Id.* at 19. When Mother left, she did not tell Father her future address or even to what city she planned to move. *Id.* Mother then contacted Father for Father to take Children to Florida. *Id.* at 21-22. Father refused. *Id.* at 22.

The trial court concluded that the fifth relocation factor did not weigh in favor of relocation to Florida. *See* Trial Ct. Op., 12/4/17, at 12. The court observed that Mother

> contends that Father intentionally deceived her as to his intentions concerning relocation and that he did so in order to thwart Mother's relationship with Children. Conversely, the court noted that Father asserted that he never affirmatively agreed to any relocation and that Mother simply assumed that Father supported the proposed relocation.

*Id.* at 11.

The trial court recognized some of Father's conduct could have led Mother to believe he supported relocation. For example, Father assisted her in packing up her belongings prior to the move and after Mother settled in Florida and engaged in ongoing discussions regarding airline tickets. *Id.* However, the court noted the testimony also indicated Father generally took a passive approach to Mother's relocation to avoid confrontation. *Id.* at 11-12. Additionally, the court observed that Father encouraged V.W.'s

relationship with Mother by having V.W. "Facetime" with Mother almost every day. *Id.* at 12.

Although Mother argues Father intentionally deceived her into moving to Florida, the trial court rejected Mother's contention based on credibility determinations. Those determinations are supported by the record. Accordingly, we are bound to the trial court's findings. *See C.R.F.*, 45 A.3d at 443. Furthermore, having reviewed the record as a whole, we cannot conclude the trial court's conclusion as to the fifth relocation factor constituted an abuse of discretion or error of law. *See M.A.T.* 989 A.2d at 18; *Bulgarelli*, 934 A.2d at 111. Therefore, Mother's first issue does not warrant relief.

In Mother's second issue, she argues the trial court erred by failing to correctly apply the primary caretaker doctrine, which she asserts requires the trial court to give positive weight to her role as the primary caregiver of Children. Mother's Brief at 13-14. Further, Mother asserts the trial court erred by concluding that neither the first relocation factor,[5] nor the tenth custody

---

[5] "The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life." 23 Pa.C.S. § 5337(h)(1).

factor,[6] weigh in her favor as a result of the primary caretaker doctrine. *Id.* at 13-14.

Contrary to Mother's argument based on the primary caretaker doctrine, however, the law no longer requires the trial court to give emphasis to a parent's status as the primary caregiver. *See M.J.M.*, 63 A.3d at 339. In *M.J.M.,* this Court specifically held that "the primary caretaker doctrine, insofar as it required positive emphasis on the primary caretaker's status, is no longer viable." *Id.* This Court reasoned that Section 5328(a) of the Child Custody Act expressly states that "all relevant factors shall be considered by the trial court, and the only factors that should be given 'weighted consideration' are factors that 'affect the safety of the child.'" *Id.* at 338 (citing 23 Pa.C.S. § 5328(a)). Therefore, we concluded the legislature did not intend the trial court to give additional consideration to a parent's role as the primary caretaker. *Id.*

The trial court here concluded that custody factor three[7] weighed in Mother's favor due to her status as the primary caretaker. Trial Ct. Op. at 20. Moreover, with respect to the first relocation factor, the court determined the factor did not weigh in favor of relocation. The court reasoned that Mother

---

[6] "Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child." 23 Pa.C.S. § 5328(a)(10).

[7] "The parental duties performed by each party on behalf of the child." 23 Pa.C.S. § 5328(a)(3).

was the primary caretaker of Children, particularly with regard to activities, medical appointments and daily care. *Id.* at 6. However, the court noted Father also shared in the childcare responsibilities, including dropping Children off for daycare, as well as assisting in the daily care of Children. *Id.* at 6-7. The court found that both Mother and Father were active in Children's lives and that Mother conceded Father was close with Children and was a good caregiver. *Id.* at 7.

Nevertheless, the trial court observed that a relocation to Florida would limit the time Children spent with their paternal grandparents, who live three hours away from Father. *Id.* Ultimately, the court concluded that relocation would impose a substantial burden on Children's relationship with Father and the paternal grandparents under the first relocation factor. *Id.* at 8.

With regard to the tenth custody factor, the trial court similarly concluded that both parties were equally able to care for Children's needs, observing that Father cared for V.W.'s needs without incident following Mother's move to Florida. *Id.* at 23-24. The court noted Mother likewise provided adequate care for S.W. *Id.* at 24. Accordingly, the court concluded custody factor ten did not favor either party. *Id.*

Our review reveals adequate support for the trial court's findings with respect to the first relocation factor and the tenth custody factor. Father testified that his role in taking care of V.W. and S.W. included cooking, changing diapers, helping with homework, and getting Children ready for bed.

N.T., 11/27/17, at 10-11. Mother testified that she registered Children for school and took them to activities and medical appointments, helped Children with homework, and attended school functions and trips. *Id.* at 120-24. Mother also testified it was important for Children to maintain a relationship with their paternal grandparents who live in New York. *Id.* at 137.

Accordingly, while Mother faults the trial court for failing to determine that the first relocation factor and the tenth custody factor favored her, the trial court appropriately determined the amount of weight to give to Mother's status as the primary caretaker. The trial court's findings that neither factor favors Mother are supported by the record. Therefore, Mother's second claim warrants no relief.

We next address Mother's third and fourth issues together, as both relate to the burden of proof applicable to this matter. In Mother's third issue, she contends the trial court erred in failing to recognize that because S.W. resided in Florida with Mother, and V.W. resided in Pennsylvania with Father, each parent had the burden of establishing the appropriateness of relocation for the child not in their custody. Mother's Brief at 15. Mother quotes *Klos v. Klos*, 934 A.2d 724, 728-29 (Pa. Super. 2007), for the proposition that "where the trial court is to formulate a primary physical custody order as well as to decide a petition for relocation, both parents stand on equal footing, sharing the burden of production and persuasion to demonstrate that the living situation that they will provide to Children serves Children's best

interests." ***Id.*** Accordingly, she argues Mother and Father bore the same burden of proof. ***Id.***

In Mother's fourth issue, she contends, without citation to authority, that the burden of proof should have shifted to Father with respect to V.W., who was in his custody at the time of the hearing. Mother asserts that "[s]ince [Mother] moved to Florida, presumably with both children, ordering that V.W. would live in Pennsylvania without considering the relocation factors and holding [Father] to his burden of proof was an error of law and an abuse of discretion." ***Id.*** at 16.

Pursuant to Section 5337(i), the burden of proof when a party seeks to relocate is as follows:

> **(i) Burden of proof.—**
>
> (1) The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h).
>
> (2) Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation.

23 Pa.C.S. § 5337(i).

Further, pursuant to Section 5337(l), a party's relocation prior to a hearing does not shift the burden of proof:

> (l) Effect of relocation prior to hearing.—If a party relocates with the child prior to a full expedited hearing, the court shall not confer any presumption in favor of the relocation.

23 Pa.C.S. § 5337(l).

This Court has explained Sections 5337(i) and 5337(l) as follows:

Section 5337(l), by its unambiguous language, prohibits a court from conferring a presumption in favor of a relocation that occurred prior to a full expedited hearing. Thus, in that situation, a trial court may not adopt a *prima facie* inference that the relocation is necessarily in the child's best interest, and it may not as a result, require the party opposing relocation to bear the burden of rebutting such an inference.

This plain reading of section 5337(l) is supported by 23 Pa.C.S. § 5337(i), a neighboring subsection concerning burden of proof. Section 5337(i) establishes that the party proposing relocation shall bear the burden of establishing that the relocation will serve the best interest of the child or children. Given that context, we read section 5337(l) as preserving the allocation of burdens set forth in section 5337(i), even in the presence of an existing relocation.

In sum, the trial court must apply the same consideration of the best interests of the child, and impose the same allocation of burdens, even where a relocation occurs prior to a full expedited hearing.

**B.K.M.**, 50 A.3d at 175.

Here, V.W. and S.W. resided with Mother and Father in Mother's home in Pennsylvania from the time of their births until August of 2017. N.T., 11/27/2017, at 4-5. Mother moved to Florida in August of 2017. Father informed Mother that he and Children would not move to Florida sometime between August 21, 2017 and August 28, 2017. *Id.* at 173-74. Thereafter, Mother returned to Pennsylvania to retrieve Children and a fight ensued between Mother and Father, at which time the police were called. *Id.* at 151-52. The responding Pennsylvania State Troopers told Mother and Father that they had to compromise, and the only compromise Mother and Father could come up with was for Mother to take S.W. to Florida with her. *Id.* at 152-53.

Within two weeks of Mother's move to Florida, Father filed his complaint for custody, and Mother issued her notice of proposed relocation.

With respect to relocation, the trial court determined that because "Mother is seeking the proposed relocation, Mother bears the burden of demonstrating by a preponderance of the evidence that the proposed relocation to Florida is in the best interests of Children." Trial Ct. Op. at 5-6. Pursuant to Sections 5337(i) and 5337(l), the trial court correctly determined Mother, as the party seeking to relocate, bore the burden of establishing the relocation would serve the best interests of both children. *See B.K.M.*, 50 A.3d at 175. Accordingly, because the trial court did not err in its determination, Mother's third and fourth issues fail.

In her fifth issue, Mother contends that the trial court improperly conducted its own internet research regarding her employment in Florida. Mother's Brief at 16. Mother claims that the court compounded this error by looking at the wrong website. *Id.* at 17. Mother asserts the independent investigation was "improper and may have caused the lower court to unjustifiably question [Mother's] veracity, which could have affected the lower court's exercise of discretion in the case or led to a bias against [Mother] that was not warranted." *Id.*

This Court has held "[a] trial court may not consider evidence outside of the record in making its determination. Nor may this [C]ourt uphold a trial court's order on the basis of off-the-record facts." *Ney v. Ney*, 917 A.2d 863,

866 (Pa. Super. 2007) (citations and quotation marks omitted); *see also M.P. v. M.P.*, 54 A.3d 950, 954 (Pa. Super. 2012) (reiterating that a trial court may not consider evidence outside the record in making its decision). This prohibition stems from due process concerns. "The right of a litigant to in-court presentation of evidence is essential to due process: 'In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.'" *Wood v. Tucker*, 332 A.2d 191, 192 (Pa. 1974) (citing *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970)).

Here, Mother testified that she obtained a required certificate to teach kindergarten in Florida. The trial court, however, in ruling on this case accessed a website for Mother's school in Florida and a website for the Florida Department of Education. Trial Ct. Op. at 2. Based on this independent internet research, the court noted that it did not appear that any certification was necessary for Mother's job and that the Florida Department of Education had no record of Mother obtaining a teaching certification. *Id.*

Additionally, the trial court referenced Mother's purported lack of certification in the context of its analysis of the sixth relocation factor.[8] *Id.* at 13, n. 9. The court, however, also concluded that the economic benefits of

---

[8] "Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity." 23 Pa.C.S. § 5337(h)(6).

moving to Florida were limited or non-existent based on a myriad of appropriate factors. *Id.* at 12-14.

For example, the trial court observed Mother's prior job in Pennsylvania at the Blue Ridge School District paid her $10.00 an hour and allowed her to participate in a pension plan before she obtained her bachelor's degree. *Id.* at 13 & n.2. However, the court emphasized that Mother made no effort to seek employment in Pennsylvania after obtaining her bachelor's degree. *Id.* at 13-14. The court also recognized that Mother increased her wages by $2.00 an hour and obtained benefits at her new position in Florida. *Id.* The court also noted that Mother lived in a one-bedroom apartment in Florida for essentially the same monthly cost as Mother's entire home in Pennsylvania. *Id.* at 14.

Accordingly, we agree that the trial court's independent research was improper. *See Wood*, 332 A.2d at 192. However, in light of the trial court's analysis of the sixth relocation factor, we conclude that this error was harmless. *See Moorman v. Tingle*, 467 A.2d 359, 363 (Pa. Super. 1983) (finding that error in the introduction and use a letter from two out-of-state social workers was reversible error where the conclusion reached by the trial court was "supportable even without resort to the correspondence"). We further discern no basis in the record to conclude that the court's independent research tainted the remainder of its findings of fact or credibility determination under the circumstances of this case. Therefore, we decline to

conclude that the trial court's independent research constituted reversible error. *See id.*

Mother's sixth and seventh issues raise a challenge to the weight of the evidence with regard to the trial court's analysis of the custody and relocation factors. With respect to both the relocation and custody factors, Mother's brief analyzes each factor and argues why Mother agrees or disagrees with the trial court's analysis of each factor. Because Mother's arguments regarding both issues are similar, we address them together.

With regard to the custody factors, Mother agrees with the trial court's conclusion that fifth, seventh, fourteenth, and fifteenth factors either do not apply or do not weigh in favor of either party. Mother's Brief, at 23-24, 27. Mother further agrees with the trial court's conclusion that factors three, twelve, and thirteen weigh in her favor. *Id.* at 22, 27. Mother, however, contends the trial court should have concluded factors one, two, four, six, eight, nine, ten, eleven, and sixteen favored her. *Id.* at 19-28.

With respect to the relocation factors, Mother claims "it is obvious that the factors for relocation fall heavily in favor of [Mother]." *Id.* at 28-29. Mother contends the trial court erred by concluding relocation factors one, two, three, five, six, seven,[9] nine, and ten did not weigh in favor of relocation. *Id.* at 29-37. Mother further claims the trial court failed to consider factor

---

[9] The trial court determined this factor slightly favored Mother.

eight and mis-numbered factors nine and ten. *Id.* at 34. Mother generally contends that the trial court should have weighed the custody and relocation factors in her favor for five reasons: (1) Father's "trickery and deceit" regarding Mother's move to Florida; (2) Mother's status as the primary caretaker; (3) communication issues involving Mother, Father, and Children; (4) the benefits of Mother's move to Florida; and (5) allegations of domestic violence. *Id.* at 19-37.

Here, the trial court thoroughly reviewed all of the applicable custody and relocation factors in its comprehensive opinion.[10] *See* Trial Ct. Op., at 6-26. With respect to relocation, the trial court concluded:

> Mother has failed to meet her burden of proof to demonstrate that the proposed relocation promotes the best interest of Children. As to the [ten] statutory factors, Mother failed to demonstrate that [nine] of those factors weighed in favor of relocation. As to the single factor upon which Mother sustained her burden of proof, it only weighed slightly in favor of relocation. For these reasons, Mother has overwhelmingly failed to meet her burden of proof of demonstrating that the proposed relocation would be in the best interests of Children.

*Id.* at 17.

---

[10] The trial court addressed relocation factor eight, "The reasons and motivation of each party for seeking or opposing the relocation," 23 Pa.C.S. § 5337(h)(8), in a footnote, finding each party acted in good faith as to their respective positions. Trial Ct. Op. at 17. However, in making this determination, the trial court referenced 23 Pa.C.S. § 5337(i)(2) ("Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation").

Similarly, with regard to the custody factors, the court concluded "they weigh slightly in favor of Father in that [four] of those factors weighed in favor of Father while only [three] weighed in favor of Mother. Nine of the factors were either neutral between the parties or had no applicability to this case." *Id.* at 26.

As noted above, the trial court rejected Mother's argument that Father "tricked" her into moving to Florida, observed that while Mother was the primary caretaker Father appropriately cared for Children, and noted that Father made V.W. available for "Facetime" regularly. Additionally, the trial court determined the alleged incident of domestic violence, in which both Mother and Father were charged with harassment, could not form a basis for a finding of abuse by either party. *Id.* at 6-8, 11-12, 19. Further, the court noted that the economic benefits of Mother's move were minimal, but credited Mother's testimony that Children would be able to interact with individuals with similar racial backgrounds, and that Florida would allow Children more cultural and educational opportunities. *Id.* at 10-16.

Contrary to Mother's arguments, the trial court's findings and conclusions are supported by the record. As discussed in greater detail above, the trial court's conclusion that Father did not trick or deceive Mother into moving to Florida is supported by the evidence. Further, the trial court appropriately weighed Mother's and Father's care of Children. Additionally, while Mother claims Father does not promote her relationship with Children,

Mother acknowledged that she spoke with V.W. almost every day while V.W. was in Father's custody. N.T., 11/27/17, at 142.

With regard to Mother's allegations of domestic violence, the record reveals that the alleged incident of domestic violence occurred in late August of 2017, during the instant dispute over the custody and relocation of Children. Specifically, when Mother attempted to take Children to Florida, Mother testified she and Father got into a physical altercation. According to Mother, Father got in Mother's face, Mother pushed Father, and Father grabbed Mother by the throat before attempting to run into the house with Children. *Id.* at 151. Mother then grabbed Father and scratched him. *Id.* Mother and Father were both charged with harassment as a result of the incident. *Id.* at 152.

With respect to the benefits of Mother's move, prior to moving to Florida, Mother testified Mother worked as a paraprofessional in the Blue Ridge School District in Pennsylvania. The position was only for the school year. *Id.* at 115. Mother earned $10.00 an hour with no benefits, although she did participate in the school district's pension plan. *Id.* at 116, 164-165. Mother could have returned to her prior position at the start of the new school year and would have earned $10.50 per hour. *Id.* at 159-160. Mother's new position as a kindergarten co-teacher at a private school in Florida pays $12.00 per hour and includes benefits, as well as free tuition for her children. *Id.* at 132.

Therefore, to the extent Mother challenges the weight attributed to any factor by the trial court, we find no abuse of discretion. The weight that a trial court gives to any one factor is within its discretion. **See M.J.M.**, 63 A.3d at 339. In the present case, the trial court analyzed and addressed each factor under Section 5328(a) and Section 5337(h). Moreover, our review of Mother's arguments, the trial court's rulings, and the record as a whole, reveals that the trial court's findings and determinations on the appropriate balance of the custody factors set forth in Section 5328(a) and the relocation factors set forth in Section 5337(h) are supported by competent evidence in the record. Therefore, we will not disturb them. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/9/2018